IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Garfias-Ortega, | No. CV-13-01450-PHX-NVW (BSB) |
| Petitioner, | **REPORT AND RECOMMENDATION** |
| v. | |
| Charles L. Ryan, et al., | |
| Respondents. | |

Miguel Garfias-Ortega (Petitioner) has filed a timely Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. § 2254.  (Doc. 1.)  Respondents have filed an Answer asserting that Petitioner's claims are procedurally barred or lack merit (Doc. 11), and Petitioner has filed a Reply in support of his Petition.  (Doc. 14.)  For the reasons below, the Petition should be denied.

## I.   Procedural Background

### A.   Charges, Trial, and Sentencing

Petitioner was indicted in the Maricopa County Superior Court (trial court) on two counts of armed robbery and one count of attempted armed robbery.  (Doc. 11, Ex. A.) The indictment alleged that in June 2004 Petitioner and another person approached three men who were changing a tire on the side of the highway, and robbed them at gunpoint. (Doc. 11, Ex. Z at 2.)  In August 2006, a jury found Petitioner guilty of both counts of armed robbery, violations of Ariz. Rev. Stat. § 13-1904 and class two felonies, and not guilty of attempted armed robbery.  (Doc. 11, Exs. B, Z at 2.)  The jury also found that

1    both counts of armed robbery were dangerous offenses.  (Doc. 11, Ex. B.)  Although the

2    State had alleged several aggravating factors, the court did not submit aggravating factors

3    to the jury.  (Doc. 11, Ex. Z at 2.)

4        At the June 6, 2008 sentencing hearing, the trial court found as aggravating factors

5    the "presence of an accomplice, multiple victims, emotional harm to the victims, the fact

6    that [Petitioner's] vehicle was used to facilitate the commission of the offense," and

7    Petitioner's lack of remorse.  (Doc. 11, Exs. V, Z at 3.)  The court imposed concurrent,

8    aggravated sentences of fifteen years' imprisonment on each count of conviction.

9    (Doc. 11, Exs. V, Z at 3.)

10       **B.     Direct Appeal**

11       Petitioner appealed to the Arizona Court of Appeals (court of appeals or appellate

12   court), arguing that the trial court violated his Fifth Amendment right against self-

13   incrimination by considering his lack of remorse an aggravating factor.  (Doc. 11, Ex. X

14   at 24-30.)  The State argued that even if the trial court improperly considered Petitioner's

15   lack of remorse as an aggravating factor, Petitioner was not prejudiced because the

16   court's consideration of that factor did not affect Petitioner's sentence.  (Doc. Y at 9-10.)

17   Thus, the State argued that the trial court would have imposed the same sentence, even if

18   it did not consider Petitioner's lack of remorse.  (*Id.*)  Additionally, although Petitioner

19   had not raised the issue, the State conceded that the trial court erred by imposing

20   aggravated sentences in the absence of a prior conviction, or Petitioner's admission, or a

21   jury finding of at least one aggravating factor.[1]  (*Id.* at 6-9.)  However, the State argued

22   that Petitioner was not prejudiced because "no reasonable jury" could have failed to find

23   the presence of an accomplice, pecuniary gain, and emotional or financial harm to the

24   victims as aggravating factors.  (Doc. 11, Ex. Y at 8.)

---

25

26       [1]   In a subsequent petition for review to the Arizona Supreme Court, appellate
    counsel explained that she did not raise that sentencing issue because any rational jury
27   that convicted Petitioner would also have found the trial court's three statutory
    aggravating factors: presence of an accomplice, multiple victims, and emotional or
28   financial harm to the victims.  (Doc. 11, Ex. AA at 2.)

1    The court of appeals first addressed the State's concession that the trial court had
2    violated *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and *Blakely v. Washington*, 542
3    U.S. 296 (2004), by imposing aggravated sentences in the absence of jury findings, or
4    Petitioner's admission, of at least one aggravating factor.  (Doc. 11, Ex. Z at 4-5.)  The
5    court of appeals found that the trial court had erred, but concluded that Petitioner was not
6    prejudiced because under Arizona law the existence of a single aggravating factor
7    exposes a defendant to an aggravated sentence, and considering the record, "no
8    reasonable jury could both convict [Petitioner] and simultaneously find that an
9    accomplice was not present."  (*Id.* at 8.)

10   The appellate court next found that the trial court violated Petitioner's Fifth
11   Amendment right against self-incrimination by considering his lack of remorse as an
12   aggravating factor.  (*Id.* at 9.)  Additionally, although Petitioner had not explicitly raised
13   the issue, the appellate court concluded that the trial court erred in considering the use of
14   Petitioner's vehicle to facilitate the offenses as an aggravating factor under
15   Ariz. Rev. Stat. § 13-701(D).  (*Id.* at 9-10.)  However, the appellate court found that
16   Petitioner could not establish prejudice, and denied relief, because it was "clear that the
17   court would have imposed an aggravated sentence without reference to Defendant's use
18   of his vehicle or refusal to admit guilt."  (*Id.* at 8-11.)

19   On May 4, 2010, the court of appeals affirmed Petitioner's convictions and
20   sentences.  (Doc. 11, Ex. Z.)  Petitioner filed a timely petition for review (Doc. 11,
21   Ex. AA at 5), which the Arizona Supreme Court summarily denied on November 30,
22   2010. (Doc. 11, Exs. CC, DD.)

23   **C.    Post-Conviction Proceedings**

24   On June 18, 2010, Petitioner filed a notice of post-conviction relief in the trial
25   court, pursuant to Rule 32 of the Arizona Rules of Criminal Procedure.  (Doc. 11, Ex. II.)
26   The trial court dismissed the notice without prejudice because Petitioner's direct appeal
27   was still pending.  (Doc. 11, Ex. JJ.)  After the conclusion of his direct appeal, on
28   December 15, 2010, Petitioner filed another notice of post-conviction relief.  (Doc. 11,

Ex. KK.)  On February 11, 2011, Petitioner's appointed post-conviction counsel filed a notice stating that, after review of the record, she found no colorable claims to raise on post-conviction review.  (Doc. Ex. LL.)  She requested an extension of time for Petitioner to file a pro per petition.  (*Id.*)

On October 31, 2011, proceeding pro per, Petitioner filed a fifty-four page petition raising numerous claims.  (Doc. 11, Ex. MM.)  The State moved to strike the petition because it violated Rule 32.5, which imposes a mandatory twenty-five page limit. (Doc. 11, Ex. NN.)  On January 5, 2012, the trial court granted the State's motion. (Doc. 11, Ex. OO.)  The court directed the clerk to "immediately" return the over-length petition to Petitioner and to send "a form petition for [his] use."  (*Id.*)  The trial court advised Petitioner that he could "revise his petition to comply with the page limits imposed by Ariz. R. Crim. P. 32.5," and file the revised petition within thirty days of the court's order.  (*Id.*)  The court warned Petitioner that "[f]ailure to file a revised petition [would] result in dismissal of this Rule 32 proceeding with no further extensions without a showing of extraordinary circumstances."  (*Id.*)  Petitioner filed a motion for reconsideration of the trial court's order striking his petition.  (Doc. 11, Ex. PP.)  The trial court denied Petitioner's motion, but granted him an extension until April 6, 2012 to file a rule-compliant petition.  (Doc. 11, Ex. QQ.)  The trial court stated that "[n]o further extensions of time shall be granted."  (*Id.*)

Nonetheless, Petitioner requested an additional extension of time to file his petition.  (Doc. 11, Ex. RR.)  The trial court granted this request and extended the deadline for Petitioner to file his petition until June 29, 2012.  (Doc. 11, Ex. SS.)  The court again stated that "[n]o further extensions will be granted without a showing of extraordinary circumstances."  (*Id.*)  On July 9, 2012, Petitioner filed another request for an extension.  (Doc. 11, Ex. TT.)  Although the trial court did not find extraordinary circumstances, it granted Petitioner an additional extension, until August 16, 2012, to file a petition.  (Doc. 11, Ex. UU.)  The trial court stated that if Petitioner did not file a timely petition, he would be required to show cause for failing to do so.  (*Id.*)  On October 8,

1    2012, the trial court dismissed the Rule 32 proceeding because Petitioner did not file a

2    petition by the August 16, 2012 deadline. (Doc. 11, Ex. VV.)

3         Four days later, the trial court received Petitioner's motion to reconsider the

4    August 16, 2012 deadline, which Petitioner had apparently mailed on July 29, 2012.

5    (Doc. 11, Exs. WW, XX.) The trial court denied the motion as moot. (Doc. 11, Ex. XX.)

6    Petitioner then filed a motion for reconsideration of the trial court's order dismissing the

7    Rule 32 proceeding. (Doc. 11, Ex. YY.) The trial court denied the motion, stating it did

8    not find "good cause" to reconsider its order, and noting that it had granted Petitioner

9    three extensions of time, plus an additional twenty days, to file his petition and that

10   Petitioner had failed to file a timely petition. (Doc. 11, Ex. ZZ.) Petitioner did not seek

11   review of the dismissal of his Rule 32 proceeding in the court of appeals.

12        **D.      Petition for Writ of Habeas Corpus**

13        On July 16, 2013, Petitioner filed the pending Petition raising the following

14   grounds for relief: (1) the trial court imposed an aggravated sentence based on

15   aggravating factors not found by a jury beyond a reasonable doubt, in violation of the

16   Fifth and Sixth Amendments (Doc. 1 at 3); (2) there is "newly discovered" evidence that

17   the "lead detective" committed perjury during the grand jury proceedings (*Id.* at 4);

18   (3) the prosecutor committed misconduct in violation of Petitioner's due process and

19   Sixth Amendment rights by "compelling [a] witness to testify by the use of threat[s],"

20   and by misstating testimony and referring to inadmissible evidence during closing

21   argument (*Id.* at 5); (4) the trial court denied Petitioner's right to a fair trial in violation of

22   his due process and Sixth Amendment rights because (i) he was mentally incompetent,

23   (ii) the trial court forced him to appear before the jury wearing "identifiable jail

24   clothing," (iii) the court erred by denying his motion "for dismissal" based on insufficient

25   evidence and unreliable testimony, and failed to rule on a motion for a new trial filed

26   before sentencing, and (iv) the trial court erred in imposing an aggravated sentence based

27   on factors that were not found by the jury (*Id.* at 6); (5) the trial court violated Petitioner's

28   due process and Sixth Amendment rights by disregarding the use of perjured testimony

during grand jury proceedings (*Id.* at 7);[2] (6) the trial judge was biased against Petitioner in violation of the Due Process Clause as evidenced by his denial of several motions filed by defense counsel, insistence that Petitioner appear before the jury in jail clothing, and imposition of a sentence based on "non-enumerated factors in the Arizona statutes" and aggravating factors not found by the jury (*Id.* at 8); (7) his convictions violate the Due Process Clause because there was insufficient evidence (*Id.* at 9); (8) Petitioner was denied the effective assistance of trial counsel in violation of the Sixth Amendment (*Id.* at 10); (9) Petitioner was denied the effective assistance of appellate counsel in violation of the Sixth Amendment (Doc. 1 at 11); (10) Petitioner was denied the effective assistance of post-conviction counsel in violation of the Sixth Amendment (*Id.* at 12); and (11) several "structural errors" violated his due process and Sixth Amendment rights. (*Id.* at 13.)

Respondents assert that habeas corpus review of Petitioner's claims is procedurally barred, except for Petitioner's claims in Ground One that the trial court violated the Fifth Amendment by considering Petitioner's lack of remorse an aggravating factor, and that the trial court violated the Sixth Amendment by imposing aggravated sentences based on factors not admitted by Petitioner or found by a jury. (Doc. 11.) Respondents further argue that the claims that are properly before this Court lack merit. For the reasons below, the Petition should be denied.

## II.    Exhaustion and Procedural Bar

### A.    Federal Court Review

Ordinarily, a federal court may not grant a petition for writ of habeas corpus unless the petitioner has exhausted available state remedies. 28 U.S.C. § 2254(b). To exhaust state remedies, a petitioner must afford the state courts the opportunity to rule upon the merits of his federal claims by "fairly presenting" them to the state's "highest" court in a procedurally appropriate manner. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004)

---

[2]  Ground Five raises several additional claims that duplicate the claims asserted in Ground Four. (*Compare* Ground Four *with* Ground Five, Doc. 1 at 6-7.) The Court does not reiterate the duplicate claims.

("[t]o provide the State with the necessary 'opportunity,' the prisoner must 'fairly present' his claim in each appropriate state court . . . thereby alerting that court to the federal nature of the claim"); *Castille v. Peoples*, 489 U.S. 346, 349 (1989) (same). "A claim has been 'fairly presented' if the petitioner has described both the operative facts and the federal legal theory on which his claim is based." *Baldwin*, 541 U.S. at 33. A "state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or brief . . . that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so." *Id.* at 31-32. Thus, "a petitioner fairly and fully presents a claim to the state court for purposes of satisfying the exhaustion requirement if he presents the claim: (1) to the proper forum, . . (2) through the proper vehicle, . . . and (3) by providing the proper factual and legal basis for the claim." *Insyxiengmay v. Morgan*, 403 F.3d 657, 668 (9th Cir. 2005) (internal citations omitted).

The requirement that a petitioner exhaust available state court remedies promotes comity by ensuring that the state courts have the first opportunity to address alleged violations of a state prisoner's federal rights. *See Duncan v. Walker*, 533 U.S. 167, 178 (2001); *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). Principles of comity also require federal courts to respect state procedural bars to review of a habeas petitioner's claims. *See Coleman*, 501 at 731-32. Pursuant to these principles, a habeas petitioner's claims may be precluded from federal review in two situations.

First, a claim may be procedurally defaulted and barred from federal habeas corpus review when a petitioner failed to present his federal claims to the state court, but returning to state court would be "futile" because the state court's procedural rules, such as waiver or preclusion, would bar consideration of the previously unraised claims. *See Teague v. Lane*, 489 U.S. 288, 297-99 (1989); *Beaty v. Stewart*, 303 F.3d 975, 987 (9th Cir. 2002). If no state remedies are currently available, a claim is technically exhausted, but procedurally defaulted. *Coleman*, 501 U.S. at 732, 735 n.1.

Second, a claim may be procedurally barred when a petitioner raised a claim in state court, but the state court found the claim barred on state procedural grounds. *See Beard v. Kindler*, 558 U.S. 53 (2009). "[A] habeas petitioner who has failed to meet the State's procedural requirements for presenting his federal claim has deprived the state courts of an opportunity to address those claims in the first instance." *Coleman*, 501 U.S. at 731-32. In this situation, federal habeas corpus review is precluded if the state court opinion relies "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." *Harris v. Reed*, 489 U.S. 255, 260 (1989). A state procedural ruling is "independent" if the application of the bar does not depend on an antecedent ruling on the merits of the federal claim. *See Stewart v. Smith*, 536 U.S. 856, 860 (2002); *Ake v. Oklahoma*, 470 U.S. 68, 74-75 (1985). A state court's application of the procedural bar is "adequate" if it is "strictly or regularly followed." *See Wells v. Maass*, 28 F.3d 1005, 1010 (9th Cir. 1994). If the state court occasionally excuses non-compliance with a procedural rule, that does not render its procedural bar inadequate. *See Dugger v. Adams*, 489 U.S. 401, 410-12 n.6 (1989). "The independent and adequate state ground doctrine ensures that the States' interest in correcting their own mistakes is respected in all federal habeas cases." *Coleman*, 501 U.S. at 732. Although a procedurally barred claim has been exhausted, as a matter of comity, the federal court will decline to consider the merits of that claim. *See id.* at 729-32.

However, because the doctrine of procedural default is based on comity, not jurisdiction, federal courts retain the power to consider the merits of procedurally defaulted claims. *See Reed v. Ross*, 468 U.S. 1, 9 (1984). Generally, a federal court will not review the merits of a procedurally defaulted claim unless a petitioner demonstrates "cause" for the failure to properly exhaust the claim in state court and "prejudice" from the alleged constitutional violation, or shows that a "fundamental miscarriage of justice" would result if the claim were not heard on the merits. *Coleman*, 501 U.S. at 750. Additionally, pursuant to 28 U.S.C. § 2254(b)(2), the court may dismiss plainly meritless

1    claims regardless of whether the claim was properly exhausted in state court.  *See Rhines*
2    *v. Weber*, 544 U.S. 269, 277 (2005) (holding that a stay is inappropriate in federal court
3    to allow claims to be raised in state court if they are subject to dismissal under
4    § 2254(b)(2) as "plainly meritless").

5    **B.    Ground One was Properly Exhausted, in Part**

6    In Ground One, Petitioner argues that the trial court violated the Fifth and Sixth
7    Amendments by imposing sentences based on aggravating factors that Petitioner had not
8    admitted, or that a jury had not found beyond a reasonable doubt (Ground One (a)).
9    (Doc. 1 at 3.)  Petitioner also asserts that the trial court erred in considering Petitioner's
10   lack of remorse as an aggravating factor (Ground One (b)).  (*Id.*)  Finally, Petitioner
11   asserts that the trial court erred when it considered, as an aggravating factor, the use of
12   Petitioner's vehicle in the commission of the offense (Ground One (c)).  (*Id.*)

13   **1.    Grounds One (a) and (b)**

14   Petitioner's claim in Ground One (a) was properly exhausted on direct appeal
15   when the court of appeals considered the State's concession that the trial court violated
16   the Sixth Amendment by imposing aggravated sentences in the absence of Petitioner's
17   admission or a jury finding of at least one aggravating factor.  (Doc. 11, Ex. Z at 5.)
18   Although Petitioner did not raise this claim, the appellate court's consideration of that
19   claim was sufficient to satisfy § 2254's exhaustion requirement.  *See Casey v. Moore*,
20   386 F.3d 896, 916 n.18 (9th Cir. 2004) (stating that "a claim is exhausted if the State's
21   highest court expressly addresses the claim, whether or not it was fairly presented.").

22   Petitioner's claim in Ground One (b) was exhausted when he asserted on direct
23   appeal that the trial court violated his Fifth Amendment right against self-incrimination
24   by considering his lack of remorse as an aggravating factor at sentencing.  (Doc. 11,
25   Ex. X, at 30.)  *See Castillo v. McFadden*, 399 F.3d 993, 998 n.3 (9th Cir. 2005)
26   (explaining that in non-capital cases, an Arizona state prisoner exhausts his claims by
27   presenting them to the court of appeals).  Accordingly, the Court considers the merits of
28   Grounds One (a) and (b) in Section V, below.

1

2.       **Ground One (c)**

2          Petitioner did not properly exhaust Ground One (c) because he did not assert in the

3   court of appeals a federal claim that the trial court erred by considering the use of his

4   vehicle as an aggravating factor in sentencing.   Therefore, the court of appeals resolved

5   this issue solely on the basis of state law.   (Doc. 11, Exs. X at 25, Z at 6-7); *see*

6   *Insyxiengmay*, 403 F.3d at 668 (stating that a petitioner "must make the federal basis of

7   the claim explicit either by specifying particular provisions of the federal Constitution or

8   statutes, or by citing to federal case law.").

9          In his petition for review in the Arizona Supreme Court, Petitioner again failed to

10  assert a federal basis for his claim that the trial court erred by considering the use of his

11  vehicle as an aggravating factor in sentencing.   (Doc. 11, Ex. AA.)   Even if he had

12  asserted this claim in his petition for review, it would not be exhausted because a habeas

13  petitioner does not satisfy the fair presentation requirement by raising a federal claim for

14  the first time in a petition for discretionary review.   *See Castille*, 489 U.S. at 351 (a claim

15  is not fairly presented "where the claim has been presented for the first and only time in a

16  procedural context in which its merits will not be considered unless there are 'special and

17  important reasons therefor . . . .'") (internal citations omitted); *Arizona v. Shattuck*, 684

18  P.2d 154, 156 (Ariz. 1984) (explaining that review by the Arizona Supreme Court is

19  discretionary in cases not involving a life sentence or death penalty).

20         Accordingly, Petitioner did not fairly present Ground One (c) to the state courts.

21  As discussed below in Section II(D), this claim is procedurally defaulted and barred from

22  federal habeas corpus review.

23                  **C.       Petitioner did not Properly Exhaust his Remaining Claims**

24         Petitioner did not present his remaining claims asserted in Grounds Two through

25  Eleven to the state courts, either on direct appeal or in post-conviction proceedings.

26  Accordingly, aside from Grounds One (a) and (b), Petitioner did not fairly present any of

27  his claims asserted in the pending Petition to the state courts.   Therefore, as discussed in

28

1    Section II(D), Ground One (c) and Grounds Two through Eleven are procedurally

2    defaulted and barred from federal habeas corpus review.

3         **D.   Procedural Bar to Review of Grounds One (c) and Two through Eleven**

4         Petitioner did not exhaust available state remedies with respect to his claims in

5    Ground One (c) and Grounds Two through Eleven and, as discussed below, a return to

6    state court to present those claims would be futile because Arizona's procedural rules

7    would bar presentation of these claims.   Accordingly, these claims are technically

8    exhausted and procedurally defaulted.  *See Coleman*, 501 U.S. at 732, 735 n.1.

9         First, Rule 32.4(a) requires a defendant to file a notice of post-conviction relief

10   "within ninety days of the entry of judgment and sentence or within thirty days after the

11   issuance of the order and mandate in the direct appeal, whichever is later."  Here, the

12   court of appeals issued its final order and mandate in the direct appeal on January 12,

13   2011.  (Doc. 11, Ex. DD.)   Thus, the ninety-day deadline for filing a notice of post-

14   conviction relief expired in April 2011, over two years ago.  Accordingly, Rule 32.4(a)

15   would bar Petitioner from returning to the state court to assert his claims in a post-

16   conviction proceeding.

17        Second, Rule 32.2(a)(3) precludes post-conviction relief upon any ground "that

18   has been waived at trial, on appeal, or in any previous collateral proceeding."  Petitioner

19   waived the claims asserted in Ground One (c) and Grounds Two through Eleven by

20   failing to raise them either on direct appeal or in a rule-compliant petition for post-

21   conviction relief.  *See State v. Shrum*, 203 P.3d 1175, 1178 (Ariz. 2009) (stating that

22   "[r]ule 32.2(a) precludes collateral relief on a ground that either was or could have been

23   raised on direct appeal or in a previous PCR proceeding.").

24        Third, under Rule 31.3, the time for filing a direct appeal expires twenty days after

25   entry of the judgment and sentence, and the Arizona rules do not provide for successive

26   direct appeals.   *See* Ariz. R. Crim. P. 31.   Accordingly, direct appeal is no longer

27   available for review of Petitioner's unexhausted claims.

28

1    The application of these rules does not depend on an interpretation of federal law;
2    these rules are regularly and consistently followed and, therefore, would bar any future
3    attempt to exhaust Petitioner's claims asserted in Ground One (c) and Grounds Two
4    through Eleven in state court.  *See Stewart*, 536 U.S. at 861 (holding that Arizona Rules
5    of Criminal Procedure concerning preclusion are an adequate and independent procedural
6    bar preventing federal habeas relief); *Poland v. Stewart*, 169 F.3d 573, 577-78 (9th Cir.
7    1999) (Arizona's procedural rules are "consistently and regularly followed and are
8    adequate to bar federal review."); *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir. 1998
9    (concluding that Ariz. R. Crim. P. 32.2 was an adequate and independent procedural bar).

10   Because Petitioner cannot return to state court to exhaust the claims asserted in
11   Ground One (c) and Grounds Two through Eleven, those claims are technically
12   exhausted and barred from federal habeas corpus review.  *See Teague*, 489 U.S. at 297-99
13   (claim was procedurally defaulted where it was "clear that collateral relief would be
14   unavailable to [the] petitioner" if he returned to the state courts); *McKinney v. Ryan*, 730
15   F.3d 903, 914 (9th Cir. 2013) (Arizona prisoner's unexhausted claim was procedurally
16   barred because he would be barred from raising it in state court pursuant to Rules 32.2(a)
17   and 32.4); *Beaty*, 303 F.3d at 987 ("If [petitioner] has any unexhausted claims, he has
18   procedurally defaulted them, because he is now time-barred under Arizona law from
19   going back to state court.").  Because these claims are procedurally defaulted, they are
20   not subject to federal habeas corpus review unless Petitioner establishes a "fundamental
21   miscarriage of justice" or "cause and prejudice" to overcome the procedural bar.  *See
22   Coleman*, 501 U.S. at 749-50; *Teague*, 489 U.S. at 297-98.  As discussed in Sections III
23   and IV, Petitioner has not established either basis to excuse the procedural default of
24   these claims and allow federal habeas corpus review.

25   **III.   Fundamental Miscarriage of Justice**

26   A federal court may review the merits of a procedurally defaulted claim if the
27   petitioner demonstrates that failure to consider the merits of that claim will result in a
28   "fundamental miscarriage of justice."  *Schlup v. Delo*, 513 U.S. 298, 327 (1995).   A

"fundamental miscarriage of justice" occurs when "'a constitutional violation has probably resulted in the conviction of one who is actually innocent.'" *Id.* (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

To establish a fundamental miscarriage of justice, a petitioner must present "new reliable evidence — whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence — that was not presented at trial." *Schlup*, 513 U.S. at 324. The petitioner has the burden of demonstrating that "it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Id.* at 327. Petitioner does not argue that failure to consider his defaulted claims will result in a fundamental miscarriage of justice. (Docs. 1, 2, 14). Accordingly, this exception does not excuse the procedural bar.

## IV.    Cause and Prejudice

A federal court may review the merits of a procedurally defaulted claim if a petitioner establishes "cause" and "prejudice." *Coleman*, 501 U.S. at 750. To establish "cause," a petitioner must establish that some objective factor external to the defense impeded his efforts to comply with the state's procedural rules. *Teague*, 489 U.S. at 298. A showing of "interference by officials," constitutionally ineffective assistance of counsel, or "that the factual or legal basis for a claim was not reasonably available" may constitute cause. *Murray*, 477 U.S. at 488.

"Prejudice" is actual harm resulting from the constitutional violation or error. *Magby v. Wawrzaszek*, 741 F.2d 240, 244 (9th Cir. 1984). To establish prejudice, a habeas petitioner bears the burden of demonstrating that the alleged constitutional violation "worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *United States v. Frady*, 456 U.S. 152, 170 (1982) (emphasis in original); *see Thomas v. Lewis*, 945 F.2d 1119, 1123 (9th Cir. 1991). If petitioner fails to establish cause for his procedural default, then the court need not consider whether petitioner has shown actual prejudice resulting from the alleged constitutional violations. *Smith v. Murray*, 477 U.S. 527, 533 (1986).

1

2

**A.     The Complexity of Arizona's Procedural Rules, and Petitioner's Lack of Legal Knowledge and Pro se Status do not Constitute Cause**

3     To establish cause, Petitioner argues that Arizona's Rules of Criminal Procedure

4   are "so cumbersome, complex, and confusing that they frustrated [his] good faith

5   attempts to comply with them."  (Doc. 3 at 2.)  In support of that assertion, Petitioner

6   explains that he filed a timely petition for post-conviction relief in the trial court, but the

7   trial court struck it for failure to comply with the page limits of Rule 32.5.  (Doc. 3 at 2-

8   3.)  Thus, it appears that Petitioner is arguing that because he was proceeding pro se and

9   lacked legal knowledge, including knowledge of the page limits in Rule 32.5, he should

10   be excused from complying with Arizona's procedural requirements.  He also argues that

11   he was unaware that he could seek appellate review of the trial court's dismissal of his

12   petition for post-conviction relief.  (Doc. 14 at 5.)

13     To the extent that Petitioner argues "cause" based on his pro se status and lack of

14   legal knowledge, including his lack of knowledge of the Arizona Rules of Criminal and

15   Appellate Procedure, his arguments are unavailing.   A petitioner's lack of legal

16   knowledge, status as an inmate, and limited legal resources do not constitute cause to

17   excuse the procedural bar.  *See Tacho v. Martinez*, 862 F.2d 1376, 1381 (9th Cir. 1988)

18   (petitioner's arguments concerning his mental health and reliance upon jailhouse lawyers

19   did not constitute cause); *Hughes v. Idaho State Bd. of Corrs.*, 800 F.2d 905, 909 (9th

20   Cir. 1986) (an illiterate pro se petitioner's lack of legal assistance was not cause to excuse

21   a procedural default).

22     Additionally, Petitioner does not explain why, after the trial court struck his over-

23   length petition and directed him to file a rule-compliant petition, he was unable to do so,

24   despite the trial court granting him several extensions of time.  The Court finds that the

25   alleged complexity of the Arizona Rules of Criminal and Appellate procedure,

26   Petitioner's lack of legal knowledge, and Petitioner's pro se status do not constitute cause

27   to overcome the procedural bar to his claims.

28

**B.**     **Interference by Prison Officials does not Constitute Cause**

Petitioner further argues "cause" based on his assertion that on July 30, 2012, after the trial court extended the deadline for him to file a rule-complaint petition to August 16, 2012, he "gave prison officials his state court petition to mail and it was never received by the state court."  (Doc. 3 at 4; Doc. 14 at 5, Exs. 2, 3)  He asserts that because the trial court never received that petition, it dismissed the post-conviction proceeding on October 8, 2012.  (Doc. 14 at 5.)

A petitioner may establish cause for a procedural default when prison officials delay the mailing of state court pleadings.  *See Maples v. Stegall*, 340 F.3d 433, 439 (6th Cir. 2003) (stating that "[w]here a pro se prisoner attempts to deliver his petition [to prison officials] for mailing in sufficient time for it to arrive timely in the normal course of events, the [prison mailbox] rule [established in *Houston v. Lack*, 487 U.S. 266 (1988)] is sufficient to excuse a procedural default based upon a late filing.").  However, because the record does not support Petitioner's assertion that he submitted a petition for post-conviction relief to prison officials for mailing on July 30, 2012, the interference of prison officials does not constitute cause for his procedural default.

Instead, the record reflects that on January 5, 2012, the trial court struck Petitioner's petition for post-conviction relief because it exceeded the page limits of Rule 32.5, but the court granted Petitioner an extension of time until February 6, 2012 to file a revised, rule-compliant petition.  (Doc. 11, Ex. OO.)  Petitioner filed a motion for reconsideration of the order striking his over-length petition and, on March 7, 2012, the trial court denied Petitioner's motion to reconsider, but extended the deadline for Petitioner to file a petition for post-conviction relief until April 6, 2012.  (Doc. 11, Ex. QQ.)  On May 3, 2012 granted Petitioner an additional forty-five day extension of time, until June 29, 2012, to file a rule-compliant petition.  (Doc. 11, Exs. RR, SS.)  On July 9, 2012, Petitioner requested another forty-five day extension of time to file a petition.  (Doc. 11, Ex. TT.)  The court denied Petitioner's extension request, but granted

1    him another extension of time, until August 16, 2012, to file a rule-compliant petition.

2    (Doc. 11, Ex. UU.)

3        On October 8, 2012, the trial court dismissed the post-conviction proceeding

4    because Petitioner had not filed a rule-compliant petition and the deadline to do so had

5    passed.   (Doc. 11, Ex. VV.)   Several days later, the trial court received Petitioner's

6    motion to reconsider its denial of his July 9, 2012 request for an extension of time.

7    (Doc. 11, Ex. WW.)   Petitioner's motion for reconsideration was dated July 29, 2012.

8    (*Id.*)   The trial court denied the motion to reconsider as moot. (Doc. 11, Ex. XX.)

9        On November 15, 2012, the trial court received Petitioner's motion to reconsider

10   its October 8, 2012 dismissal of the post-conviction proceeding.   (Doc. 11, Ex. YY.)   In

11   that motion, Petitioner argued that the trial court had dismissed the post-conviction

12   proceeding before it had received or considered his July 29, 2012 motion for

13   reconsideration of the order denying the July 9, 2012 extension request.   (*Id.*)   Petitioner

14   stated that "official prison records" showed that his motion for reconsideration was "sent

15   out on July 30, 2012."   (*Id.* at 2.)   Petitioner did not argue that he had filed or attempted

16   to file a petition for post-conviction relief by submitting it to prison officials for mailing.

17   On December 10, 2012, the trial court denied the motion for reconsideration.   (Doc. 11,

18   Ex. ZZ.)

19       The record does not support Petitioner's assertion that he either submitted, or

20   attempted to submit, a rule-compliant petition before the August 16, 2012 deadline.

21   Petitioner refers to a "petition" that he submitted to prison officials for mailing on July

22   30, 2012, but that was not received by the trial court until after it dismissed the post-

23   conviction proceedings.   (Doc. 3 at 4; Doc. 14 at 5; Doc. 14-1 at 12.)   It appears,

24   however, that Petitioner is referring to his July 29, 2012 motion for reconsideration of the

25   denial of his July 9, 2012 extension request, which the trial court received four days after

26   it dismissed the post-conviction proceeding.   (Doc. 11, Exs. WW, XX, YY at 2.)

27   Petitioner's argument that he did not receive a ruling on his July 29, 2012 motion for

28

1   reconsideration before the August 16, 2012 deadline for filing of a rule-compliant

2   petition, does not constitute cause for failing to file his petition by the deadline.

3          Although it appears that Petitioner submitted the motion for reconsideration to

4   prison officials for mailing on July 30, 2012 (Doc. 11, Ex. YY at 2; Doc. 14-1 at 12),

5   Petitioner does not allege that he inquired into the status of that motion at any time before

6   or after the August 16, 2012 deadline for filing his rule-compliant petition.   The trial

7   court did not dismiss the post-conviction proceeding until October 8, 2012.   (Doc. 11,

8   Ex. VV.)   Thus, Petitioner had ample time to inquire into the status of his motion for

9   reconsideration and has not shown that his failure to receive a ruling on that motion until

10  after the August 16, 2012 deadline, or that that prison officials' alleged interference with

11  the mailing of his "petition," constitutes cause to excuse the procedural bar to his claims

12  asserted in Ground One (c) and Ground Two through Eleven.

13          **C.      Ineffective Assistance of Appellate Counsel does not Constitute Cause**

14          Petitioner also argues that appellate counsel's ineffective assistance "resulted in a

15  default in a proceeding . . . ."   (Doc. 3 at 1.)   To the extent Petitioner contends that the

16  ineffective assistance of appellate counsel constitutes cause to overcome the procedural

17  bar, his claim fails.   Although in some circumstances the ineffective assistance of

18  appellate counsel may establish cause for a procedural default, "a claim of ineffective

19  assistance must be presented to the state courts as an independent claim before it may be

20  used to establish cause for a procedural default."   *Carrier*, 477 U.S. at 488-89; *see also*

21  *Edwards v. Carpenter*, 529 U.S. 446, 451-53 (2000) ("ineffective-assistance-of-counsel

22  claim asserted as cause for the procedural default of another claim can itself be

23  procedurally defaulted"); *Tacho*, 862 F.2d at 1381 (same).   Petitioner did not present any

24  claims of ineffective assistance of appellate counsel to the state courts.   Accordingly, the

25  ineffective assistance of appellate counsel does not establish cause to overcome the

26  procedural bar to habeas corpus review of Ground One (c) and Grounds Two through

27  Eleven.

28

1

2

### D.    Ineffective Assistance of Post-Conviction Counsel does not Constitute Cause

3

4

5

6

7

8

9

10

11

12

13

14

To establish "cause" to overcome the procedural bar of his claims, Petitioner also argues that he was denied the effective assistance of counsel on post-conviction review. (Doc. 3 at 1-2; Doc. 14.)   Generally, any errors of counsel during the post-conviction proceedings cannot serve as a basis for cause to excuse a petitioner's procedural default of other claims.  *See Coleman*, 501 U.S. at 752.  However, in *Martinez v. Ryan*, ___ U.S. ___, 132 S. Ct. 1309, 1315 (2012), the Supreme Court established a limited exception to this general rule.   The Court held that the ineffective assistance of post-conviction counsel "at initial-review collateral review proceedings" — while not stating a constitutional claim itself — may establish cause to excuse procedural default of claims of  ineffective assistance of trial counsel when a post-conviction proceeding represents the first opportunity under state law for a petitioner to litigate such claims.  *Id.* at 1315. "Cause" is established under *Martinez* when:

15

16

17

18

19

> (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the   "ineffective-assistance-of-trial-counsel   claim";   and (4) state law requires that an "ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral review proceeding.

20

21

22

23

24

*Trevino v. Thaler*, __ U.S.__, 133 S. Ct. 1911, 1918 (2013) (citing *Martinez*, 132 S. Ct. at 1318-19, 1320-21).  In *Nguyen v. Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013), the Ninth Circuit held that "the *Martinez* standard for cause applies to all Sixth Amendment ineffective-assistance claims, both to trial and appellate, that have been procedurally defaulted by ineffective counsel in the initial-review state-court collateral proceeding."

25

26

27

28

The *Martinez* exception applies only to the ineffectiveness of post-conviction counsel in the initial post-conviction review proceeding.  It "does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial."  *Id.* at 1320.  Rather, *Martinez* is concerned that,

if ineffective assistance of counsel claims were not brought in the collateral proceeding that provided the first occasion to raise such claims, then the claims could not be brought at all. *Id.* at 1316. Therefore, a petitioner may not assert "cause" to overcome the procedural bar based on attorney error that occurred in "appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts." *Id.* at 1320.

Because the *Martinez* cause standard applies only to defaulted ineffective assistance of counsel claims, the only claims to which it might apply in this case are Petitioner's claims of ineffective assistance of trial and appellate counsel asserted in Grounds Eight and Nine.[3] Petitioner argues that the procedural default of his claims of ineffective assistance of trial and appellate counsel should be excused because post-conviction counsel was ineffective for failing to raise those claims. Thus, the Court must first address whether Petitioner has shown a "substantial" claim of ineffective assistance of counsel.[4]

A "substantial" claim "has some merit." *Martinez*, 132 S. Ct. at 1318. Like the standard for issuing a certificate of appealability, to establish a "substantial" claim, a petitioner must demonstrate that "reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Detrich v. Ryan*, 740 F.3d 1237, 1245 (9th Cir. 2013) (internal quotations omitted). In other words, a claim is

---

[3]   Respondents argue that under *Martinez*, the ineffective assistance of post-conviction counsel may establish cause "only for the procedural default of a claim asserting ineffective assistance of counsel at trial," and thus only applies to Ground Eight, which alleges ineffective assistance of trial counsel. (Doc. 11 at 20.) After Respondents filed their Answer, the Ninth Circuit clarified that "the *Martinez* standard for cause" applies to claims of trial and appellate counsel. *See Nguyen*, 736 F.3d at 1296. The Court, however, does not require additional briefing to resolve whether ineffective assistance of post-conviction counsel constitutes cause for the procedural default of Petitioner's claims of ineffective assistance of appellate counsel.

[4]   The third and fourth prongs of the *Martinez* test are not at issue because an Arizona petitioner cannot bring a claim of ineffective assistance of trial or appellate counsel until the "initial-review state court collateral proceeding . . . ." *See Nguyen*, 736 F.3d at 1294-95.

1   "'insubstantial' if it does not have any merit or is wholly without factual support."  *Id.*

2   Determining whether an ineffective assistance of counsel claim is substantial requires a

3   district court to examine the claim under the standards of *Strickland v. Washington*, 466

4   U.S. 668 (1984).

5             **1.        Establishing an Ineffective Assistance of Counsel Claim**

6             To establish a claim of ineffective assistance of counsel a petitioner must

7   demonstrate that counsel's performance was deficient under prevailing professional

8   standards, and that he suffered prejudice as a result of that deficient performance.  *Id.* at

9   687-88.   To establish deficient performance, a petitioner must show "that counsel's

10   representation fell below an objective standard of reasonableness."   *Id.* at 699.   A

11   petitioner's allegations and supporting evidence must withstand the court's "highly

12   deferential" scrutiny of counsel's performance, and overcome the "strong presumption"

13   that counsel "rendered adequate assistance and made all significant decisions in the

14   exercise of reasonable professional judgment."   *Id.* at 689-90.   A petitioner bears the

15   burden of showing that counsel's assistance was "neither reasonable nor the result of

16   sound trial strategy," *Murtishaw v. Woodford*, 255 F.3d 926, 939 (9th Cir. 2001), and

17   actions by counsel that "'might be considered sound trial strategy'" do not constitute

18   ineffective assistance.   *Strickland*, 466 U.S. at 689 (quoting *Michel v. Louisiana*, 350

19   U.S. 91, 101 (1955)).

20             To establish prejudice, a petitioner must show a "reasonable probability that, but

21   for counsel's unprofessional errors, the result of the proceeding would have been

22   different." *Strickland*, 466 U.S. at 694.  A "reasonable probability" is one "sufficient to

23   undermine confidence in the outcome."   *Id.*   Courts should not presume prejudice.

24   *Jackson v. Calderon*, 211 F.3d 1148, 1155 (9th Cir. 2000).   Rather, a petitioner must

25   affirmatively prove actual prejudice, and the possibility that a petitioner suffered

26   prejudice is insufficient to establish *Strickland's* prejudice prong. *See Cooper v.*

27   *Calderon*, 255 F.3d 1104, 1109 (9th Cir. 2001) ("[A petitioner] must 'affirmatively prove

28   prejudice.' . . . This requires showing more than the possibility that he was prejudiced by

1    counsel's errors; he must demonstrate that the errors *actually* prejudiced him.") (quoting

2    *Strickland*, 466 U.S. at 693) (emphasis in original).   However, the court need not

3    determine whether counsel's performance was deficient if the court can reject the claim

4    of ineffectiveness based on the lack of prejudice.  *See Jackson*, 211 F.3d at 1155 n.3 (the

5    court may proceed directly to the prejudice prong).

6               **2.       Ground Eight — Ineffective Assistance of Trial Counsel**

7           In Ground Eight, Petitioner asserts that trial counsel was ineffective by: (a) failing

8    to move to remand to the grand jury based on a police detective's perjured testimony;

9    (b) failing to request a competency hearing before or during trial; (c) failing to consult

10   with Petitioner more than a "couple of times," which foreclosed the opportunity for

11   Petitioner to advise counsel he did want to testify, failing to investigate the ownership of

12   the "subject vehicle alleged to be [Petitioner's]," failing to obtain information from "the

13   airlines" to prove that Petitioner was not in Arizona at the time of the offenses, and

14   failing to investigate witnesses to obtain impeachment evidence; (d) failing to provide

15   Petitioner with suitable clothing for trial; (e) failing to move for a continuance or a

16   mistrial when the trial court compelled Petitioner to appear before the jury wearing

17   "identifiable jail attire"; (f) failing to object when the prosecutor "deliberately misstated

18   testimony" regarding a gun during closing argument; (g) failing to argue in closing that

19   Petitioner was mistakenly identified; (i) failing to object to Petitioner's unlawfully

20   aggravated sentence; and (j) failing to act as an adversary.  (Doc. 1 at 10.)

21          As  discussed  below  in  Section  IV(D)(2)(a)-(h),  Petitioner  has  not  asserted

22   "substantial" claims of ineffective assistance of trial counsel. Therefore, he cannot

23   establish "cause" under *Martinez,* based on the ineffective assistance of post-conviction

24   counsel in failing to raise these claims of ineffective assistance of trial counsel, to

25   overcome the procedural bar to federal habeas review of these claims.  In addition, even

26   if these claims were properly before this Court, they would fail on the merits.

27

28

1

2

### a.    Ground Eight (a) – Failure to Move to Remand to Grand Jury

3    Petitioner argues that trial counsel was ineffective for failing to request a remand

4    to the grand jury under Ariz. R. Crim. P. 12.9 because police detective Pablo Garcia

5    (Detective Garcia) allegedly falsely testified before the grand jury that Petitioner's

6    vehicle was used in the offense and that the victims could identify him.  (Doc. 1 at 4, 10;

7    Doc. 14 at 7-8.)  Respondents argue that, even assuming that Detective Garcia offered

8    this testimony to the grand jury, Petitioner has not established that this testimony was

9    false.[5]  (Doc. 11 at 21.)

10    The portion of the grand jury transcript that includes Detective Garcia's testimony

11    regarding the use of Petitioner's car in the commission of the robbery is not in the record

12    before the Court.  Accordingly, for the purpose of analyzing Petitioner's claim, the Court

13    assumes that Detective Garcia testified before the grand jury as Petitioner asserts.  During

14    trial, Detective Garcia and two other witnesses testified that Petitioner's vehicle was used

15    in the robbery.  (Doc. 11, Ex. EE at 81, 87-88 (Jesus Fernandez), 99-102 (Carlos

16    Carbajal), 130 (Detective Garcia).)  Thus, it appears that Detective Garcia's grand jury

17    testimony was consistent with his trial testimony and there is no indication that his grand

18    jury testimony regarding the use of Petitioner's vehicle was false.

19    Although the record before the Court does not include the entire grand jury

20    transcript, Respondents' exhibit MM is a copy of one of Petitioner's state court filings

21    and it includes portions of a transcript that Petitioner identified as "Detective Garcia's

22    testimony relating to photo-line-up" during the November 3, 2004 grand jury proceeding.

23    (Doc. 11, Ex. MM, Doc. 11-4 at 61-63.)  That transcript includes Detective Garcia's

24    testimony that he showed "photographic lineups" that included a photograph of Garfias-

25    Ortega to "the three alleged victims," and that two of the three victims "identif[ied]

26

27    _____

28    [5]  In Ground Two, Petitioner characterizes Detective Garcia's alleged false grand jury testimony as "new evidence."  (Doc. 1 at 4.)  Because the veracity of Detective Garcia's testimony could have been ascertained at the time of the grand jury proceeding and at trial, it is not "new" evidence.

1   Mr. Garfias-Ortega as an individual involved in this situation."[6]   (Doc. 11-4 at 62-63.)

2   During trial, however, Detective Garcia testified that those same two victims had not

3   identified Petitioner from a photographic lineup.  (Doc. 11, Ex. FF at 8-10.)

4         Based on the portion of the transcript in the record, Detective Garcia's grand jury

5   testimony regarding the victims' identification of Petitioner from photographic lineups

6   appears to conflict with his trial testimony.  Under Arizona law, a grand jury's finding of

7   probable cause may be challenged "by a motion alleging that the defendant was denied a

8   substantial procedural right" and seeking remand to the grand jury.  Ariz. R. Crim. P.

9   12.9.  Arizona courts have found that a petitioner was "denied substantial due process"

10   when false evidence was either intentionally or unintentionally presented to the grand

11   jury and was used as a basis for a finding of probable cause.  *Nelson v. Roylston*, 699

12   P.2d 1349, 1354 (Ariz. Ct. App. 1983).

13         Although it appears that Detective Garcia may have given inaccurate testimony

14   before the grand jury, without the complete grand jury transcript, the Court cannot

15   determine whether counsel was deficient for failing to file a motion to remand or whether

16   counsel could have reasonably believed that the trial court would have denied a motion to

17   remand, making such a motion futile.  *See Shah v. United States*, 878 F.2d 1156, 1162

18   (9th Cir. 1989) ("The failure to raise a meritless legal argument does not constitute

19   ineffective assistance of counsel") (quotation omitted).  However, because Petitioner

20   must establish both *Strickland* requirements, the Court will first consider whether

21   Petitioner has established prejudice and, if not, the Court need not consider whether

22   counsel's performance was deficient.  *See Strickland*, 466 U.S. at 697 (explaining that

23   "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient

24   prejudice, . . . that course should be followed."); *Rios v. Rocha*, 299 F.3d 796, 805 (9th

25   Cir. 2002) (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the

26   need to consider the other.").

27   

28         [6]  Detective Garcia clarified that, although there were three victims to the robbery, the police were unable to locate the third victim.  (Doc. 11, Ex. FF at 7-8, 13-14.)

Here, Petitioner cannot show that he was prejudiced by counsel's failure to file a motion to remand because a jury later found him guilty beyond a reasonable doubt of two counts of armed robbery as charged.  *See United States v. Mechanik*, 475 U.S. 66, 70 (1986) (holding that any error with respect to the charging decision by the grand jury is rendered harmless by subsequent conviction by the petit jury); *United States v. Anderson*, 61 F.3d 1290, 1297 n.5 (7th Cir. 1995) (petitioner's claim of ineffective assistance of counsel based on failure to challenge the indictment for lack of probable cause failed because "his subsequent conviction establishes that there was 'no reasonable probability' that the result of the proceeding would have been different but for his trial counsel's alleged error."); *Jones v. Ryan*, 2010 WL 383510, at *31 (D. Ariz. Jan. 29, 2010) (citing *Mechanik*, 475 U.S. at 70) (concluding that even if counsel was deficient for failing to challenge witness's grand jury testimony as false, any error was harmless); *Murray v. Schriro*, 2006 WL 988133, at *7 (D. Ariz. Apr. 13, 2006) (concluding that "[b]ecause a jury found [p]etitioner guilty of the charged offenses beyond a reasonable doubt, the alleged absence of probable cause before the grand jury, even if true, would be harmless error.").  Thus, even assuming counsel's performance was deficient for failing to file a motion to remand to the grand jury on the basis that Detective Garcia's grand jury testimony was false, Petitioner has not established prejudice.

Accordingly, Petitioner has not presented a "substantial" claim of ineffective assistance of trial counsel to establish "cause" under *Martinez* to overcome the procedural bar to federal habeas corpus review of Ground Eight (a).  In addition, even if Petitioner's claim asserted in Ground Eight (a) were properly before the Court, it would fail on the merits.

### b.      *Ground Eight (b) - Failure to Request a Competency Hearing*

In Ground Eight (b), Petitioner argues that trial counsel was ineffective for failing to request a competency hearing before or during trial because "during the commencement of court proceedings, [he] conveyed his concerns to his trial lawyer

regarding [his] mental illness and [informed counsel that he] required psychiatric medication." (Doc. 1 at 10, Doc. 14 at 8-10.)  Respondents agree that trial counsel did not request a competency hearing pursuant to Ariz. R. Crim. P. 11 before trial. (Doc. 11 at 21-22.)  Rather, they argue that trial counsel's performance was not deficient because he filed numerous motions regarding Petitioner's competency between trial and sentencing, and Petitioner cannot establish prejudice because he received competency proceedings. (*Id.*)

Under the Due Process Clause, a state may not try a person who is mentally incompetent. *See Drope v. Missouri*, 420 U.S. 162, 171 (1975).  To be competent to stand trial, a defendant must demonstrate "a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960); *see also* Ariz. R. Crim. P. 11. 1 ("A person shall not be tried, convicted, sentenced or punished for a public offense, except for proceedings pursuant to [Ariz. Rev. Stat.] § 36-3707(D), while, as a result of a mental illness, defect, or disability, the person is unable to understand the proceedings against him or her or to assist in his or her own defense.").

Counsel is not required to request a competency hearing in every instance in which a defendant has exhibited signs of mental illness. *See Drope*, 420 U.S. 162 at 180. ("There are, of course, no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; the question is often a difficult one in which a wide range of manifestations and subtle nuances are implicated.")  However, "[c]ounsel's failure to move for a competency hearing violates the defendant's right to effective assistance of counsel when 'there are sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency, and there is a reasonable probability that the defendant would have been found incompetent to stand trial had the issue been raised and fully considered.'" *Stanley v. Cullen*, 633 F.3d 852, 862 (9th Cir. 2011) (quoting *Jermyn v. Horn*, 266 F.3d 257, 283 (3d Cir. 2001)).

Petitioner asserts that before trial he informed counsel of his "apparent case of schizophrenia, post-traumatic stress disorder, and about his required psychiatric medication." (Doc. 14 at 9.) In support of his assertion, Petitioner cites a portion of an "External Grievance" and "External Response" (the Grievance and Response) regarding a grievance that he apparently filed on November 10, 2006, when he was housed in Towers Jail. (Doc. 14, Ex. 4; Doc. 14-1 at 13.) The grievance related to Petitioner's June 19, 2006 request to be seen by "psych" while housed at the Lower Buckeye Jail. (Doc. 14-1 at 13.)

Petitioner was tried in state court in August 2006. (Doc. 11, Exs. EE-GG.) Thus, even assuming that trial counsel was aware of Petitioner's November 2006 Grievance and Response, because it was filed *after* the trial date, it could not have put counsel on notice *before* trial that Petitioner had any sort of mental illness that affected his competency to stand trial. Additionally, even if trial counsel knew that Petitioner had requested to been seen by a psychiatric professional in June 2006, several months before his trial commenced, the information in the Grievance and Response does not include "sufficient indicia of incompetence to give objectively reasonable counsel reason to doubt the defendant's competency."[7]  *See Stanley*, 633 F.3d at 862. Instead, the Grievance and Response indicates that Petitioner was experiencing "anxiety and depression" that was "non-urgent," and that Petitioner was not prescribed psychiatric medication until October 26, 2006, after his trial had concluded. (Doc. 14-1 at 13 (noting that, on June 19, 2006, Petitioner indicated that "he had never been treated for any mental health problems but was now suffering anxiety and depression" and that on June 22, 2006 a "mental health professional" "determined this was a non-urgent issue").) (*Id.*)  The information contained in the Grievance and Response does not support Petitioner's assertion that trial counsel had notice before or during trial that Petitioner had a mental health issue that

---

[7]  On February 8, 2008, trial counsel filed a motion for a new trial and stated that he "was unaware of Defendant's request to see a psych before trial." (Doc. 11, Ex. S at  2.)

1    would have "given objectively reasonable counsel reason to doubt [Petitioner's]

2    competency."  *See Stanley*, 663 F.3d at 862.

3        In further support of Ground Eight (b), Petitioner cites a page from a December 4,

4    2006 report that the public defender's mitigation specialist Linda Shaw prepared for

5    sentencing.  (Doc. 14, Ex. 6; Doc. 14-1 at 35; Doc. 11, Ex. HH at 3, 6.)  Ms. Shaw's

6    report lists "schizoaffective disorder" and "post-traumatic stress disorder" among her

7    "diagnostic impressions."  (Doc. 14-1 at 35.)  However, because this report was not

8    prepared until December 4, 2006, several months after the conclusion of Petitioner's trial,

9    it could not have put trial counsel on notice before or during trial of any mental health

10   issues that might have affected Petitioner's competency to stand trial.

11       Thus, the evidence Petitioner cites in support of Ground Eight (b) does not support

12   his contention that trial counsel had reason to doubt his competency before or during

13   trial.[8]  *See Stanley*, 633 F.3d at 862; *Davis v. Woodford*, 384 F.3d 628, 646-47 (9th Cir.

14   2004) (rejecting ineffective assistance claim when record did not demonstrate

15   "substantial evidence" of incompetence); *Williams v. Woodford*, 306 F.3d 665, 702 (9th

16   Cir. 2002) (explaining that, "[a]lthough no particular facts signal a defendant's

17   incompetence, suggestive evidence includes the defendant's demeanor before the trial

18   judge, irrational behavior of the defendant, and available medical evaluations of the

19   defendant's competence to stand trial.").

20       Furthermore, even assuming that trial counsel was deficient for failing to request a

21   competency hearing before or during trial, Petitioner has not established prejudice.

22   Between trial and sentencing, after trial counsel received a report from Dr. Richard

23   Rosengard concluding that Petitioner was incompetent, counsel twice moved for a

24   competency evaluation.  (Doc. 11, Exs. E, K.)  The trial court appointed an expert under

---

25       [8]   The trial court could have *sua sponte* ordered a competency examination if it
     observed behavior warranting one.  *See State v. Amaya–Ruiz*, 800 P.2d 1260, 1270 (Ariz.
26   1990) (stating that "[a] trial judge is under a continuing duty to inquire into a defendant's
     competency, and to order a rule 11 examination *sua sponte* if reasonable grounds exist.").
27   The fact that the court did not order a competency examination suggests that it did not
     observe behavior that raised a concern about Petitioner's mental competency.
28

1    Ariz. R. Crim. P. 26.5, which governs presentence mental health examinations, to assess

2    Petitioner's mental status.  (Doc. 11, Exs. I, J.)  After the court-appointed expert found

3    Petitioner incompetent, the trial court ordered that Petitioner receive treatment for

4    restoration to competency.  (Doc. 11, Ex. N.)  The trial court subsequently ruled that the

5    Rule 26.5 evaluation was inadequate to initiate restoration proceedings, granted trial

6    counsel's motion for a competency evaluation under Rule 11, and appointed two experts

7    to evaluate Petitioner's competency.  (Doc. 11, Exs. O, P.)  Based on the reports of the

8    court-appointed experts, the trial court found that Petitioner understood the proceedings,

9    was able to assist counsel, and was competent to proceed.  (Doc. 11, Ex. R.)

10         Trial counsel then moved for a new trial asserting, among other grounds, that

11   Petitioner was mentally incompetent during trial.  (Doc. 11, Ex. S.)  The trial court

12   deferred ruling on the competency issue until after the State responded, and denied the

13   motion on the other grounds asserted.  (Doc. 11, Ex. T.)  The State argued that doctors

14   had found Petitioner competent and there were "no indications that the defendant was

15   incompetent or mentally ill at the time of trial."  (Doc. 11, Ex. U.)  Although the trial

16   court never explicitly ruled on the request for a new trial based on Petitioner's alleged

17   incompetency, it implicitly denied that request by proceeding to sentencing.  *See United*

18   *States v. Stolarz,* 547 F.2d 108, 110 (9th Cir. 1976) ("[T]he entry of judgment amounts to

19   an implicit denial of [a] motion for new trial.").

20         Therefore, Petitioner has not made a substantial showing of either deficient

21   performance or prejudice.  *See Martinez*, 132 S. Ct. at 1315.  The record reflects that trial

22   counsel's performance was not deficient because he filed several motions for an

23   evaluation of Petitioner's competency, and requested a new trial, after he became aware

24   of Petitioner's potential mental incompetency.  (Doc. 11, Exs. C, E, K, S.)  Additionally,

25   Petitioner has not established prejudice because he received a Rule 11 competency

26   evaluation between trial and sentencing, and two experts and the trial court found him

27   competent to proceed.  *See Puhrmann v. Schriro*, 2007 WL 1830600, at *9-11.  (D. Ariz.

28   Mar. 26, 2007) (finding that the petitioner was not prejudiced by trial counsel's failure to

1    request a Rule 11 competency hearing when medical records obtained before sentencing
2    did not mention psychological or cognitive deficiencies).  Additionally, he has not shown
3    that the results of a competency evaluation before or during trial would have differed
4    from his presentence competency evaluation.  *See Cooper*, 255 F.3d at 1109 (petitioner
5    must "affirmatively prove prejudice").

6        Thus, Petitioner has not presented a "substantial" claim of ineffective assistance of
7    counsel based on trial counsel's failure to request a competency hearing before or during
8    trial, and has not established "cause" under *Martinez* to overcome the procedural bar and
9    to allow federal habeas corpus review of his claim in Ground Eight (b). Furthermore,
10   even if that claim were properly before the Court, it would fail on the merits.

11           *c.    Ground Eight (c) - Failure to Investigate and Confer*

12       In Ground Eight (c), Petitioner argues that trial counsel was ineffective for failing
13   to consult with him more than a few times, which deprived him of the opportunity to tell
14   counsel he did not want to testify.  (Doc. 1 at 10.)  Petitioner also asserts that counsel was
15   ineffective for failing to investigate the "actual" owner of the vehicle used in the
16   commission of the robberies, failing to investigate "the airlines" to establish that
17   Petitioner was not in Arizona at the time of the robberies, and failing to investigate
18   "witnesses' backgrounds" to obtain impeachment evidence.  (*Id.*)

19       Petitioner has not provided citations to the law or the record to support these
20   allegations.  (*Id.*)  His unsupported, conclusory allegations are insufficient to support a
21   claim for ineffective assistance of counsel.  *See Jones v. Gomez*, 66 F.3d 199, 204-05 (9th
22   Cir. 1995) (stating that conclusory allegations with no reference to the record or other
23   evidence do not warrant habeas relief).  Moreover, the record does not support
24   Petitioner's allegations.

25       First, the record suggests that trial counsel consulted with Petitioner regarding
26   witnesses who could help the defense because he called Petitioner's fiancée, brother, and
27   sister-in-law as witnesses on Petitioner's behalf.  (Doc. 11, Ex. FF at 81-85, 90-92, 101-
28   03.)  Additionally, Petitioner testified in his own defense, which suggests that counsel

consulted with him to develop questions to ask him at trial. (Doc. 11, Ex. FF at 32-78.) The record before the Court, including the trial transcripts, does not suggest that Petitioner did not want to testify at trial. Petitioner could have raised that issue at trial, yet there is no indication in the record that Petitioner expressed a desire to invoke his Fifth Amendment right not to testify or that he otherwise expressed a desire not to testify.

Second, Petitioner does not describe the evidence counsel would have uncovered had he further investigated the ownership of the vehicle used in the robberies. *See Beaver v. Thompson*, 93 F.3d 1186, 1195 (4th Cir. 1996) ("an allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."). Additionally, trial counsel cross-examined Carlos Carbajal and challenged his testimony that Petitioner owned the vehicle used in the robberies, but that Carbajal registered the vehicle in his name as a favor to Petitioner. (Doc. EE, at 99-102, 111-12.)

Third, Petitioner also argues that trial counsel was ineffective for failing to investigate "the airlines" to discover evidence confirming that Petitioner was not in Arizona at the time of the robberies, but he again fails to identify the evidence counsel would have uncovered through such an investigation. (Doc. 1 at 10.) Moreover, it is unlikely that an investigation into "the airlines" would have uncovered any favorable evidence because Petitioner admitted during trial that he was in Arizona in June 2004 when the robberies were committed, and he also testified that he had unsuccessfully tried to obtain airlines records regarding his flight from the east coast to Arizona in March 2004, and his return flight to the east coast in July or August 2004. (Doc. 11, Ex. FF at 44, 53.)

Finally, Petitioner's assertion that trial counsel did not investigate the witnesses' backgrounds for impeachment purposes is not supported by the record, which indicates that on cross-examination trial counsel questioned the victim-witnesses regarding their testimony, especially regarding their identifications of Petitioner. (Doc. 11, Ex. EE, at 30-35, 57-59.) Trial counsel similarly attacked Petitioner's accomplice Jesus Fernandez

1    on cross-examination, and elicited testimony that he inculpated Petitioner to protect

2    himself and to secure a conviction on lesser charges.  (*Id.* at 90-91.)

3         Even assuming that trial counsel was deficient, as Petitioner alleges in Ground

4    Eight (c), Petitioner has not established prejudice.  *See Strickland*, 466 U.S. at 697

5    (explaining that "[i]f it is easier to dispose of an ineffectiveness claim on the ground of

6    lack of sufficient prejudice, . . . that course should be followed."); *Rios*, 299 F.3d at 805.

7    Petitioner has not described the information counsel could have learned upon additional

8    consultation with him, or the information he could have obtained if he had further

9    investigated the ownership of the vehicle, the airlines, or the witnesses' backgrounds.

10   Petitioner's unsupported allegations are not sufficient to establish a claim of ineffective

11   assistance of counsel.  *See Alcala v. Woodford*, 334 F.3d 862, 872-73 (9th Cir. 2003) (to

12   succeed on an ineffective assistance of counsel claim based on failure to investigate or

13   call witnesses, a petitioner must identify witnesses in question, state with specificity what

14   testimony witnesses would have provided, and explain how that testimony would have

15   altered the outcome of his trial).  Additionally Petitioner has not described how his own

16   testimony prejudiced the outcome of his trial.  *See Cooper*, 255 F.3d at 1109 (petitioner

17   must affirmatively establish prejudice).   Thus, Plaintiff's allegations of ineffective

18   assistance of trial counsel in Ground Eight (c) are not "substantial" and do not establish

19   "cause" under *Martinez*, and also fail on the merits.

20              ***d.    Grounds Eight (d) and (e)* – *Lack of Suitable Clothing***

21        In Grounds Eight (d) and (e), Petitioner asserts that trial counsel was ineffective

22   for failing to provide him with suitable clothing for trial, and for failing to move for a

23   continuance when the trial court compelled him to appear before the jury in identifiable

24   jail attire.  Although Petitioner provides varied descriptions of his attire at trial, it appears

25   that he appeared before the jury in civilian clothing with pink jail socks and slippers.[9]

26   (Doc. 1 at 10.)

27   _____

28        [9]  In his Petition, Petitioner asserts that he appeared before the jury in pink jail
     slippers and socks.  (Doc. 1 at 10.)  In his Reply, Petitioner asserts that his "new clothes,
     shoes, and socks" were missing on the first day of trial, and that he "appeared before the

The trial transcript also creates some confusion on the issue of Petitioner's courtroom attire. On the first day of testimony, the trial court noted that Petitioner was not present in the courtroom because he was "refusing to be dressed out in clothing . . . which he had from last week." (Doc. 11, Ex. EE at 2.) Trial counsel said he would talk with Petitioner, and the court explained "he does have clothing here that is available for him to put on. If he refuses to put on that clothing, then I will take that as an indication from him that he is voluntarily refusing to appear for trial or he can appear if he chooses in his jail garb, but I think the better way to proceed is to just take it as voluntary refusal to appear." (*Id.* at 2-3.)

When Petitioner subsequently appeared in the courtroom, the trial court noted that his refusal to change clothes had delayed the start of trial that day. Petitioner stated that, "I just didn't have any shoes, Your Honor. I lost my shoes." (*Id.* at 3.) The trial court advised Petitioner that his family could bring him clothing to wear but that she would not delay the trial if he refused to wear available clothing. (*Id.* at 3-4.)

After the jury returned its verdict against Petitioner, trial counsel moved for a new trial on the ground that Petitioner "was required to appear and testify before the jury wearing jail slippers because his shoes were lost by the sheriff between days of trial. This allowed the jury to know that he was in custody." (Doc. 11, Ex. S.) The trial court denied the motion as untimely filed. (Doc. 11, Ex. T.)

A defendant "may not be compelled to be tried before a jury in identifiable prison clothes." *United States v. Rogers*, 769 F.2d 1418, 1420 (9th Cir. 1985) (citing *Estelle v. Williams*, 425 U.S. 501 (1976) (holding that a defendant may not be compelled to wear jail clothes before the jury, because no "essential state policy" is served by compelling a defendant to dress in this manner.")). The court must determine whether a defendant was

jury wearing the same clothes he had already worn with identifiable pink jail slippers and socks on day one and two of trial." (Doc. 14 at 11) In a motion for new trial, Petitioner's trial counsel indicated that Petitioner appeared before the jury wearing "jail slippers." (Doc. 11, Ex. S.) Although Petitioner's Reply states that his "new clothes," were missing, it appears from the record and the Petition that Petitioner appeared before the jury in civilian clothing with pink jail socks and slippers.

compelled to appear in prison clothes because "instances frequently arise where a defendant prefers to stand trial before his peers in prison garments . . . in the hope of eliciting sympathy from the jury," *Williams*, 425 U.S. at 508 (citing *Andern v. Watt*, 475 F.2d 881, 882 (10th Cir. 1973)).

Even assuming that trial counsel was deficient for failing to provide Petitioner with suitable attire (foot wear and socks), and failing to object to the trial court requiring Petitioner to appear before the jury wearing pink jail socks and slippers, he has not shown a reasonable probability that counsel's failure to provide him will a full set of civilian clothing affected the outcome of his trial. The jury acquitted him of one of the three charges, which suggests that his pink jail socks and slippers were not outcome determinative. *See United States v. de Cruz*, 82 F.3d 856, 861 (9th Cir. 1996) (noting that a verdict acquitting a defendant of some charges was "indicative a lack of prejudice toward defendant."); *Whitman v. Bartow*, 434 F.3d 968, 972 (7th Cir. 2006) ("Because [the petitioner's] appearance before the jury in his prison clothing did not prejudice the outcome of his trial, [the petitioner's] ineffective assistance of counsel claim also fails . . . . The evidence of [the petitioner's] guilt was overwhelming, and his attire was not an outcome determinative factor in the jury's decision."); *Balas v. Ryan*, 2011 WL 3320652, at *1 (D. Ariz. Aug. 2, 2011) (petitioner failed to establish that counsel's failure to object to his appearance in prison clothing and restraints was prejudicial considering evidence of Petitioner's guilt).

Thus, Petitioner has not presented a "substantial" claim of ineffective assistance of counsel in Grounds Eight (d) and (e) and has not established "cause" under *Martinez* to overcome the procedural bar and to allow federal habeas corpus review of these claims. Even if these claims were properly before the Court, they would fail on the merits.

### e.    *Ground Eight (f) - Failure to Object to Closing Argument*

During closing argument, the prosecutor acknowledged that the police never found the gun that the victims described, and he referred to witness Carbajal's testimony that he lent Petitioner a gun "the night before this armed robbery."  (Doc. 11, Ex. GG at 10-11.)

1    The prosecutor also suggested that, even though the gun that was used in the robberies
2    was never found, Petitioner had plenty of time between the robberies in 2004 and his trial
3    in 2006 to dispose of the gun.  (*Id.* ("From 2004 until the time he's picked up there
4    wouldn't have been any opportunity, ladies and gentlemen, for him to not have it
5    anymore? No, that's not reasonable.  Of course it's gone.").)  The prosecutor argued that
6    the "link" between Petitioner and the gun was Carbajal "put[ing] it in his hand."  (*Id.* at
7    11.)  In Ground Eight (f), Petitioner asserts that trial counsel was ineffective for failing to
8    object during closing argument when the prosecutor "deliberately misstated testimony
9    linking [Petitioner] to a gun that was not presented at trial."  (Doc. 1 at 10.)

10       Contrary to Petitioner's assertion, the prosecutor did not misstate Carbajal's
11   testimony.  On direct examination, Carbajal testified that Petitioner had borrowed a
12   handgun from him and had not returned it.  (Doc. 11, Ex. EE at 106-07.)  He further
13   testified that he lent the gun to Petitioner on June 15, 2004, the day before the armed
14   robberies were committed.  (*Id.* at 107.)  On cross examination, Carbajal again stated that
15   he had loaned Petitioner a "pistol."  (*Id.* at 112.)  On redirect examination, Carbajal stated
16   that he was not present when Petitioner picked up the gun from the house where Carbajal
17   was staying.  (*Id.* at 113.)

18       In contrast to Carbajal's testimony about the gun, co-defendant Fernandez testified
19   on direct examination that he had carried the gun during the robberies. However, he was
20   impeached on cross-examination with an audiotape recording of his interview with police
21   in which he told Detective Garcia that Petitioner "carries a gun and was carrying a gun"
22   during the robberies.  (Doc. 11, Ex. EE at 70-72, 82-83.)  Detective Garcia also testified
23   that, when interviewed, Fernandez told him that Petitioner had a gun and "held the gun
24   on" the victims during the robberies.  (Doc. 11, Ex. FF at 13.)

25       On review of the trial court record, it appears that the prosecutor's statement that
26   Carbajal "put the gun in Petitioner's hand" was hyperbole to emphasize Carbajal's
27   testimony that he had loaned Petitioner a gun, rather than a misstatement of evidence.
28   *See Jackson v. Hall*, 2008 WL 647548, at *31 (C.D. Cal. Jan. 24, 2008) (prosecutor's use

of hyperbole during closing argument was a proper "invited response" to defense counsel's argument that defendant was not the sort of person who could have pulled off a bank robbery).  Because the prosecutor did not misstate testimony linking Petitioner to the gun used during the robberies, he has not shown that defense counsel's performance was deficient for failing to object to the prosecutor's closing argument about the gun.  *See Shah*, 878 F.2d at 1162.  Because Petitioner has not shown that counsel's performance was deficient, his claim of ineffective assistance fails.  *See Rios*, 299 F.3d at 805 (stating that "[f]ailure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").  Thus, Petitioner's claim of ineffective assistance of trial counsel asserted in Ground Eight (f) is not substantial, and also fails on the merits.

### f.   *Ground Eight (g)* - *Failure to Challenge Identifications*

In Ground Eight (g), Petitioner asserts that trial counsel was ineffective during closing argument for failing "to emphasize that [Petitioner] was mistaken for someone else," and for failing to "rectify the misstating of testimony."  (Doc. 1 at 10.)  Other than the prosecutor's closing argument regarding the gun, which Petitioner challenged in Ground 8(f), Petitioner does not identify any alleged misstatements of testimony.  Accordingly, the Court assumes Petitioner is referring to the prosecutor's closing argument about the gun.  Because the Court determined in its discussion of Ground 8(f) that the prosecutor did not misstate that evidence, counsel was not ineffective for failing to "rectify the misstating of testimony."

Additionally, contrary to Petitioner's assertion, the record reflects that trial counsel spent a significant portion of his closing argument arguing that Petitioner was misidentified as one of the perpetrators of the robberies.  (Doc. 11, Ex. GG at 24-25.)  Trial counsel highlighted differences between Petitioner's appearance and the manner in which one of the victims had described a perpetrator.  (*Id.*)  He also argued that the victims' identifications of Petitioner in the courtroom were suggestive and that "people make mistakes."  (*Id.*)  Thus, Petitioner's assertion that trial counsel did not argue that he was mistakenly identified is not supported by the record.  Accordingly, Petitioner has not

1   asserted a "substantial" claim that counsel was ineffective during closing argument, and
2   that claim also fails on the merits.

3           **g.      Ground Eight (h) - Failure to Object to Aggravated**
4                    **Sentence**

5           In Ground Eight (h), Petitioner argues that trial counsel was ineffective for failing
6   to object to his unlawfully aggravated sentence.  (Doc. 1 at 10.)  Even assuming that trial
7   counsel was deficient for failing to object to Petitioner's aggravated sentence, he has not
8   shown prejudice.  On direct appeal, the appellate court found that Petitioner was not
9   entitled to relief based on his claim that the trial court unlawfully considered aggravating
10  factors in the absence of a jury finding of at least one aggravating factor. (Doc. 11, Ex. Z
11  at 5-8.)  The appellate court found that the trial court had erred, but concluded that the
12  error was harmless.  (*Id.* at 7-8.)

13          As discussed in Section V, any error in imposing an aggravated sentence was
14  harmless. Accordingly, trial counsel was not ineffective for failing to object to the
15  aggravated sentences.  *See Nardi v. Schriro*, 2008 WL 4446963, at *41 (D. Ariz. Sept.
16  30, 2008) (stating that "because the underlying challenge to the jury instructions lacks
17  merit, the corresponding ineffective assistance of counsel claim has no merit for lack of
18  showing prejudice to Petitioner's defense.").  Accordingly, Ground 8(h) is not substantial
19  and lacks merit.

20          **h.      Ground Eight (i) - Failure to Act as an Adversary**

21          Finally, in Ground Eight (i), Petitioner argues that trial counsel was ineffective for
22  "fail[ing] to act as an adversary." (Doc. 1 at 10.)  Petitioner does not provide any legal or
23  factual support for his claim and his unsupported, conclusory allegations are not
24  sufficient to establish a claim of ineffective assistance of counsel.  *See United States v.*
25  *McMullen*, 98 F.3d 1155, 1158 (9th Cir. 1996).  To the extent that Petitioner raises a
26  claim of cumulative prejudice based on the numerous ineffective assistance claims he has
27  asserted in Ground Eight, this claim fails because Petitioner's individual claims of
28  ineffective assistance lack merit.  *See Wroe v. Mueller*, 40 F. App'x 449, 451 (9th Cir.

1    2002) (finding that because trial counsel was not deficient, petitioner could not establish

2    cumulative prejudice) (citing *Silva v. Woodford*, 279 F.3d 825, 834 (9th Cir. 2002)).

3          Petitioner has not established any "substantial" claim of ineffective assistance of

4    trial counsel under *Martinez*.  Accordingly, post-conviction counsel was not ineffective

5    for failing to raise the asserted claims of ineffective assistance of trial counsel on post-

6    conviction review and post-conviction counsel's alleged ineffective assistance does not

7    establish cause for Petitioner's failure to properly exhaust his claims of ineffective

8    assistance of trial counsel.  Moreover, even if Petitioner's claims of ineffective assistance

9    of trial counsel asserted in Ground Eight were properly before the Court, they lack merit

10   for the reasons discussed above.

11            **3.      Ground Nine — Ineffective Assistance of Post-Conviction**
                          **Counsel**
12

13         In his Reply, Petitioner also appears to argue that the ineffective assistance of

14   post-conviction counsel provides cause for his failure to properly exhaust his claims of

15   ineffective assistance of appellate counsel.  (Doc. 14 at 3.)  As previously stated, under

16   *Martinez* and *Nguyen,* the ineffective assistance of post-conviction counsel during an

17   initial review collateral proceeding can constitute cause to excuse a procedurally

18   defaulted claim of ineffective assistance of appellate counsel.  *Martinez*, 132 S. Ct. at

19   1315; *Nguyen*, 736 F.3d at 1296.  To establish cause under *Martinez*, Petitioner must

20   establish a substantial claim of ineffective assistance of appellate counsel.  *See Trevino*,

21   133 S. Ct. at 1918.

22         In Ground Nine, Petitioner argues that appellate counsel was ineffective for failing

23   to raise "dead bang" winning arguments on direct appeal and for overlooking stronger

24   arguments and raising only one issue on direct appeal.  (Doc. 1 at 11.)  The *Strickland*

25   test applies to claims of ineffective assistance of appellate counsel.  *See Miller v. Keeney*,

26   882 F.2d 1428, 1433 (9th Cir. 1989); *United States v. Birtle*, 792 F.2d 846, 847 (9th Cir.

27   1986).  Petitioner must show that his appellate counsel's performance was objectively

28   unreasonable in failing to identify and bring the claims on appeal.  *See Smith v. Robbins*,

1    528 U.S. 259, 285 (2000). "However, appellate counsel need not advance every possible

2    argument, even those that are non-frivolous, and should instead concentrate his advocacy

3    on winnowing out weaker arguments on appeal and focusing on one central issue if

4    possible, or at most on a few key issues." *Davis v. Singletary*, 853 F. Supp. 1492, 1549

5    (M.D. Fla. 1994) (internal quotations and citations omitted).

6         To succeed on a claim that appellate counsel was ineffective for failing to raise a

7    particular argument on appeal, the petitioner must establish that the omitted argument

8    was likely to be successful and therefore that he was prejudiced by its omission. *See*

9    *Tanner v. McDaniel*, 493 F.3d 1135, 1144 (9th Cir. 2007); *Weaver v. Palmateer*, 455

10   F.3d 958, 970 (9th Cir. 2006). The inquiry is not whether raising a particular issue on

11   appeal would have been frivolous, but whether there is a reasonable probability that

12   raising the issue would have led to the reversal of the petitioner's conviction. *See Miller*,

13   882 F.2d at 1434. If the petitioner had only a remote chance of obtaining reversal based

14   upon a specific issue, neither element of *Strickland* is satisfied. *Id.*

15        Here, appellate counsel winnowed out weaker arguments and focused on one

16   central issue. Specifically, appellate counsel argued that the trial court erred in

17   considering Petitioner's lack of remorse an aggravating factor at sentencing. (Doc. 11,

18   Ex. X.) In a subsequent petition for review filed in the Arizona Supreme Court, appellate

19   counsel explained that she did not challenge the trial court's finding of several other

20   aggravating factors at sentencing because any rational jury that convicted Petitioner

21   would have also found those other aggravating factors (presence of an accomplice,

22   multiple victims, and emotional or financial harm to the victims). (Doc. 11, Ex. AA at 2.)

23   Thus, appellate counsel considered other issues that could have been raised on appeal, but

24   rejected them in favor of focusing on what she considered a stronger argument. (*See id.*)

25   The process of "'winnowing out weaker arguments on appeal and focusing on' those

26   more likely to prevail, far from being evidence of incompetence, is the hallmark of

27   effective appellate advocacy." *Smith*, 477 U.S. at 536 (citing *Jones v. Barnes*, 463 U.S.

28   745, 751-752 (1983)). Here, appellate counsel's decision to raise a single issue on direct

1   appeal was not deficient performance, and Petitioner has not shown that there is a

2   reasonable probability that raising other issues on direct appeal would have led to a

3   reversal of his convictions.  Accordingly, Petitioner has not raised a substantial claim of

4   ineffective assistance of appellate counsel.

5          Petitioner also argues that appellate counsel was ineffective for failing to provide

6   him with court records and transcripts to permit him to file a supplemental brief on

7   appeal.   (Doc. 1 at 11.)   Even assuming that appellate counsel's performance was

8   deficient for failing to provide Petitioner with court records and transcripts, Petitioner has

9   not established prejudice.  He has not identified the arguments he would have raised on

10  appeal or shown that, but appellate counsel's failure to provide him with the court records

11  and transcripts, the results of his direct appeal would have been different.  *See Smith*, 528

12  U.S. at 285.

13         Thus, Petitioner has not established a substantial claim of ineffective assistance of

14  appellate counsel and has not overcome the procedural bar to his claims of ineffective

15  assistance of appellate counsel asserted in Ground Nine.  Moreover, Petitioner's claims of

16  ineffective assistance of appellate counsel lack merit for the reasons set forth above.

17  **V.     Merits Review of Grounds One (a) and (b)**

18         **A.     Standard of Review**

19         If a habeas petition includes a claim that was "adjudicated on the merits in State

20  court proceedings," federal court review is limited by § 2254(d).  Under § 2254(d)(1), a

21  federal court cannot grant habeas relief unless the petitioner shows: (1) that the state

22  court's decision "was contrary to" federal law as clearly established in the holdings of the

23  United States Supreme Court at the time of the state court decision, *Greene v. Fisher*, __

24  U.S.__, 132 S. Ct. 38, 43 (2011); or (2) that it "involved an unreasonable application of"

25  such law, § 2254(d)(1); or (3) that it "was based on an unreasonable determination of the

26  facts" in light of the record before the state court.  28 U.S.C. § 2254(d)(2); *Harrington v.*

27  *Richter*, 562 U.S. ___, 131 S. Ct. 770, 785 (2011).  This standard is "difficult to meet."

28  *Harrington*, 131 S. Ct. at 786.  It is also a "highly deferential standard for evaluating state

1    court rulings, which demands that state court decisions be given the benefit of the doubt."

2    *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam) (citation and internal

3    quotation marks omitted).

4         To determine whether a state court ruling was "contrary to" or involved an

5    "unreasonable application" of federal law, courts look exclusively to the holdings of the

6    Supreme Court that existed at the time of the state court's decision.  *Greene*, 132 S. Ct. at

7    44.  A state court's decision is "contrary to" federal law if it applies a rule of law "that

8    contradicts the governing law set forth in [Supreme Court] cases or if it confronts a set of

9    facts that are materially indistinguishable from a decision of [the Supreme Court] and

10   nevertheless arrives at a result different from [Supreme Court] precedent."  *Mitchell v.*

11   *Esparza*, 540 U.S 12, 14 (2003) (citations omitted).

12        A state court decision is an "unreasonable application of" federal law if the court

13   identifies the correct legal rule, but unreasonably applies that rule to the facts of a

14   particular case.  *Brown v. Payton*, 544 U.S. 133, 141 (2005).  "A state court's

15   determination that a claim lacks merit precludes federal habeas relief so long as

16   'fairminded jurists could disagree on the correctness of the state court's decision.'"

17   *Richter*, 131 S. Ct. at 786 (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

18   "[E]valuating whether a rule application was unreasonable requires considering the rule's

19   specificity.  The more general the rule, the more leeway courts have in reaching outcomes

20   in case-by-case determination."  *Id.*

21        When a state court decision is deemed to be "contrary to" or an "unreasonable

22   application of" clearly established federal law, a petitioner is not entitled to habeas corpus

23   relief unless the erroneous state court ruling also resulted in actual prejudice as defined in

24   *Brecht v. Abrahamson,* 507 U.S. 619, 637 (1993).  *See Benn v. Lambert*, 283 F.3d 1040,

25   1052 n.6 (9th Cir. 2002).  "Actual prejudice" means that the constitutional error at issue

26   had a "substantial and injurious effect or influence in determining the jury's verdict."

27   *Brecht*, 507 U.S. at 631. "The *Brecht* harmless error analysis also applies to habeas

28   review of an error with respect to sentencing, in other words the test is whether such error

1   had a 'substantial and injurious effect' on the sentence." *Hernandez v. LaMarque*, 2006

2   WL 2411441, at *3 (N.D. Cal., Aug. 18, 2006) (citing *Calderon v. Coleman*, 525 U.S.

3   141, 145-57 (1998) (finding sentencing error harmless because even if the evidence of

4   three prior convictions was insufficient, petitioner was not prejudiced by the court's

5   consideration of those convictions because it found four other prior convictions that

6   would have supported the petitioner's sentence)).

7       **B.**    **Ground One (a)**

8       In Ground One (a), Petitioner alleges that the trial court violated his Sixth

9   Amendment rights articulated in *Apprendi* and *Blakely* by finding aggravating sentencing

10  factors by a preponderance of the evidence.  (Doc. 1 at 3.)  Petitioner exhausted this

11  federal claim on direct appeal.  However, because Petitioner did not object at sentencing,

12  the court of appeals reviewed for fundamental error.  (Doc. 11, Ex. Z at 4.)  The appellate

13  court found that the trial court committed fundamental error by considering aggravating

14  factors at sentencing because Petitioner had no prior convictions, he did not admit to any

15  aggravating factors, and the jury did not find any aggravating factors.   (*Id.* at 6.)

16  However, the appellate court found that Petitioner was not entitled to relief because the

17  error was not prejudicial.  (*Id.* at 6-8.)  The appellate court explained that, considering the

18  record, no reasonable jury could have convicted Petitioner without also finding that an

19  accomplice was present.  (*Id.*)  Therefore, the court of appeals concluded that the trial

20  court did not prejudice Petitioner by considering the presence of an accomplice as an

21  aggravating factor.  (*Id.* at 8.)  As discussed below, this Court agrees that Petitioner was

22  not prejudiced by the trial court's error in considering aggravating factors at sentencing.

23       The Sixth Amendment proscribes the imposition of a sentence above the statutory

24  maximum based on a fact, other than a prior conviction, that is not found by a jury or

25  admitted by the defendant.  *Apprendi*, 530 U.S. at 490; *Blakely.* 542 U.S. at 301.  In

26  *Blakely*, the Supreme Court clarified that the "'statutory maximum' for *Apprendi*

27  purposes is the maximum sentence a judge may impose solely on the basis of the facts

28  reflected in the jury verdict or admitted by the defendant . . . .  In other words, the

relevant 'statutory maximum' is not the maximum sentence a judge may impose after finding additional facts, but the maximum he may impose without any additional findings." *Blakel*y, 542 U.S. at 303-04. Thus, before a trial court can impose a sentence above the statutory maximum, a jury must find beyond a reasonable doubt, or the defendant must admit, all facts "legally essential to the punishment." *Blakely*, 542 U.S. at 313.

Under Arizona's sentencing scheme, "the existence of a single aggravating factor exposes a defendant to an aggravated sentence." *State v. Martinez*, 115 P.3d 618, 625 (Ariz. 2005) (citing Ariz. Rev. Stat. § 13-702). "Therefore, once a jury finds or a defendant admits a single aggravating factor, the Sixth Amendment permits the sentencing judge to find and consider additional factors relevant to the imposition of a sentence up to the maximum prescribed in that statute." *Id.* This procedure — permitting the sentencing judge to consider additional aggravating factors and impose an aggravated sentence if the jury finds, or the defendant admits, at least one statutory aggravator — is consistent with the *Apprendi* and *Blakely* line of cases because the Supreme Court has stated that trial courts may consider any relevant evidence in determining what sentence is appropriate within the authorized range. *See Apprendi*, 530 U.S. at 481 (stating that "nothing . . . suggests that it is impermissible for judges to exercise discretion — taking into consideration various factors relating both to offense and offender — in imposing a judgment within the range prescribed by statute."). Thus, courts within the Ninth Circuit have held that the existence of one *Blakely*-complaint factor supports the imposition of a sentence anywhere within the maximum statutory range. *See Jones v. Schriro*, 2006 WL 1794765, at *3 (D. Ariz. Jun. 27, 2006) (based on the petitioner's admission of at least one aggravating factor, the trial court was authorized to impose a sentence anywhere within the statutory range.)

Because Petitioner did not object at sentencing, the appellate court properly reviewed the *Blakely* violation for fundamental error.[10] *See Mullins v. Schriro*, 2007 WL

_____

[10] Fundamental error is "error going to the foundation of the case, error that takes from the defendant a right essential to his defense, and error of such magnitude that the

4468718 *22 (D. Ariz. Dec. 17, 2007) (stating that "because Petitioner did not object at trial to the failure to have a jury determine the aggravated factors, any *Blakely* violation was properly reviewed [by the Arizona court] for fundamental error . . . .") (footnote omitted).  The appellate court found that the trial court committed a fundamental error in considering aggravating factors that were not admitted by Petitioner or found by a jury.  (Doc. 11, Ex. Z at 5-8.)   However, the appellate court found that Petitioner was not prejudiced by the error.  (*Id.*)   As set forth below, the trial court's error was not prejudicial under the standard applicable on habeas corpus review.

There is no dispute that the trial court violated the Sixth Amendment by imposing an aggravated sentence based on aggravating factors that were neither admitted by Petitioner nor found beyond a reasonable doubt by a jury.  Having found a constitutional error, the Court must determine whether the error was harmless under *Brecht.*  *See Washington v. Recuenco*, 548 U.S. 212, 221-22 (2006) (holding that harmless error analysis applies to a claim of Sixth Amendment *Blakely* error based on the failure to submit a sentencing factor to a jury).  On federal habeas corpus review, the applicable harmless error standard is whether the error had a "substantial and injurious effect" upon the sentence.  *Brecht*, 507 U.S. at 623. Under that standard, the court must grant relief if it has "grave doubt" as to whether a jury would have found the relevant aggravating factors beyond a reasonable doubt.  *O'Neal v. McAninch*, 513 U.S. 432, 436 (1995).  Grave doubt exists when, "in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error."  *Id.* at 435.  Because under Arizona law "only one aggravating factor is necessary to set the upper term as the maximum term[,] . . .[a]ny *Apprendi*[/*Blakely*] error [is] harmless if it is not

_____

defendant could not have possibly received a fair trial."  *State v. Henderson*, 115 P.3d 601, 608 (Ariz. 2005) (citation omitted).   Under the analogous federal plain-error standard, an appellate court cannot reverse, based upon an objection not timely raised in the lower court unless: (1) there was error, (2) the error was "plain," (3) the error "affects substantial rights;" and (4) the error seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *United States v. Cotton*, 535 U.S. 625, 632 (2002) (citations omitted).

1    prejudicial as to just one of the aggravating factors at issue." *Butler v. Curry*, 528 F.3d

2    624, 648 (9th Cir. 2008).

3            Here, no reasonable juror could have failed to find beyond a reasonable doubt at

4    least one of the aggravating factors that the trial court considered in imposing the

5    aggravated sentence — the presence of an accomplice.  At trial, both victims testified that

6    two men, one of whom was armed, approached them and demanded money.  (Doc. 11,

7    Ex. EE at 21-23, 44-53.)  Petitioner's accomplice Fernandez testified that Petitioner did

8    not participate in the robberies.  (Doc. 11, Ex. EE at 70-71.)  However, Fernandez was

9    impeached with an audiotape recording of his interview with police in which he stated

10   that he and Petitioner acted together to rob the victims.  (*Id.* at 79-89.)  Furthermore, as

11   the appellate court noted, Petitioner's theory of defense — that Fernandez and someone

12   other than Petitioner committed the offense — conceded that two culprits participated in

13   the robbery.  (Doc. 11, Ex. GG at 24.)  Therefore, the trial court's consideration of the

14   presence of an accomplice as an aggravating factor did not have a "substantial and

15   injurious effect" upon the sentence.  *See Mullins v. Schriro*, 2007 WL 4468718, at *26

16   (D. Ariz. Dec. 17, 2007) (because no reasonable jury would have failed to find the

17   aggravating factor that the petitioner had laid in wait and engaged in extensive

18   preplanning, any *Blakely* error was harmless).  Because the trial court's consideration of

19   the presence of an accomplice as an aggravating factor was harmless, its consideration of

20   additional aggravating factors was likewise harmless because the existence of one

21   aggravating factor permitted the trial court to consider "additional factors relevant to the

22   imposition of a sentence up to the maximum prescribed in that statute."[11]  *Martinez*, 115

23   P.3d at 625; *see Nino v. Flannigan*, 2007 WL 1412493, at *4 (D. Ariz. May 14, 2007)

24   (finding that because one *Blakely*-compliant or *Blakely*-exempt aggravating factor

25   _____

26   [11]   As the appellate court noted, Petitioner's fifteen-year sentences for the two
     counts of armed robbery were within the applicable sentencing range.  *See* Ariz.
27   Rev. Stat. § 13-704(A) (presumptive sentence of ten-and-one-half years and a maximum
     sentence of twenty-one years for a dangerous offense that is class two felony); *see* Ariz.
28   Rev. Stat. §13-1904(B) (armed robbery is a class two felony).

1   supports an aggravated sentence, the court's consideration of other factors does not

2   violate the Sixth Amendment).  Accordingly, Petitioner is not entitled to habeas corpus

3   relief on Ground One (a).

4   **B.     Ground One (b)**

5          In Ground One (b), Petitioner argues that the trial court violated his Fifth

6   Amendment right against self-incrimination by considering his lack of remorse as an

7   aggravating factor.  (Doc. 1 at 3.)  He raised this claim on direct appeal and the appellate

8   court found that under Arizona law the trial court was not "entitled to consider

9   [Petitioner's] lack of remorse as an aggravating factor," but the error was not prejudicial

10  because "it was clear that the court would have imposed an aggravated sentence without

11  reference to [Petitioner's] . . . refusal to admit guilt."  (Doc. 11, Ex. Z at 9-11.)

12         On review of this claim, the Court must determine the controlling Supreme Court

13  precedent applicable to Petitioner's Fifth Amendment claim.  *See Williams v. Taylor*, 529

14  U.S. 362, 390 (2000) (explaining that the "threshold question under AEDPA is whether

15  [the petitioner] seeks to apply a rule of law that was clearly established at the time his

16  state-court conviction became final").   The Supreme Court has never "clearly

17  established" that a sentencing court may not make an adverse inference from a

18  defendant's lack of remorse at sentencing.[12]  In *Mitchell v. United States*, the Supreme

19  Court held that the Fifth Amendment right to remain silent survives a guilty plea and

20  applies at sentencing.  526 U.S. 314, 317 (1999).  However, in *Mitchell,* the Court

21  "express[ed] no view" on "[w]hether silence bears upon the determination of a lack of

22  remorse, or upon acceptance of responsibility . . . ."  *Id.* at 330.

23         The federal courts of appeal are divided over the scope and application of

24  *Mitchell*.  *See United States v. Caro*, 597 F.3d 608, 629 (4th Cir. 2010) (collecting

25  conflicting cases regarding *Mitchell's* applicability to the non-statutory sentencing factor

26  of remorse); *see also Burr v. Pollard*, 546 F.3d 828, 832 (7th Cir. 2008) (*Mitchell* does

27  

28         [12]  *Knowles v. Mirzayance*, 556 U.S. 111, 122 (2009) (stating that to constitute
    clearly established federal law, a rule must be "squarely established" by the Supreme
    Court).

1    not prohibit the sentencing judge's consideration of the defendant's lack of remorse, even

2    if based on the defendant's silence).   Furthermore, other courts have distinguished

3    between a defendant's silence at sentencing, and a voluntary allocution, which may

4    constitute a limited Fifth Amendment waiver.  *See United States v. Whitten*, 610 F.3d

5    168, 199 (2d Cir. 2010).  Because there is no "clearly established federal law" on point,

6    Petitioner cannot establish that he is entitled to habeas corpus relief under § 2254(d)(1).

7    *See Williams*, 529 U.S. at 381.

8         Additionally, the appellate court's application of fundamental error review to a

9    sentencing error, to which Petitioner made no objection, is not contrary to or an

10   unreasonable application of clearly established federal law.  The Supreme Court has not

11   held that a consideration of a defendant's lack of remorse as an aggravating factor at

12   sentencing constitutes a structural error requiring automatic reversal.   Rather, the

13   Supreme Court has acknowledged that Fifth Amendment violations constitute "trial

14   error," subject to review for harmlessness.  *See Brecht*, 507 U.S. at 629-30 (improper

15   comment on defendant's post-*Miranda* silence was reviewed for harmlessness).

16        Federal courts apply plain error review — the functional equivalent of Arizona's

17   fundamental error review — to Fifth Amendment claims when a defendant did not object

18   at trial.  *See United States v. Rodriguez-Rodriguez*, 441 F.3d 767, 772 (9th Cir. 2006).

19   Accordingly, the appellate court's fundamental error review of Petitioner's Fifth

20   Amendment challenge to the trial court's consideration of lack of remorse as an

21   aggravating factor was not contrary to, or an unreasonable application of, clearly

22   established federal law.

23        Furthermore, to the extent that the trial court erred in considering Petitioner's lack

24   of remorse as an aggravating factor, that error was harmless.  *Brecht*, 507 U.S. at 623.  At

25   the sentencing hearing, the trial court explained why it imposed aggravated sentences:

26              As to Counts One and Two, the court finds that
               probation is not appropriate or available under the law.  The
27             court has considered these mitigating circumstances, the
               defendant's lack of prior criminal record. I do not consider his
28             age to be a mitigating circumstance, not his age now or his

age then.  I will consider mental health issues as a mitigating factor.

I've also considered these aggravating circumstances, presence of an accomplice, multiple victims, emotional harm to the victims, the fact that the defendant's vehicle was used to facilitate the commission of the offense.

And based on his statements here today, as well as his statements in the pre-sentence report, there is certainly a lack of remorse as it relates to this offense.

The court finds the aggravating circumstances are sufficiently substantial to warrant an aggravating [sic] sentence. Accordingly, as to both counts the court finds an aggravated sentence is appropriate and, thereafter, community supervision equal to one day for every seven days of this sentence.

(Doc. 11, Ex. HH at 13-14.)

Thus, the record establishes that lack of remorse was only one of several factors that the court considered when sentencing Petitioner.  The trial court's pronouncement of the sentences indicates that the court would have imposed aggravated sentences, even if it had not considered Petitioner's "lack of remorse."

Petitioner's citation to *State v. Trujillo*, 257 P.3d 1194 (Ariz. Ct. App. 2011), does not require a different result.  (Doc. 1 at 3.)  There, the court concluded that the defendant established prejudice resulting from the trial court's improper consideration of the defendant's failure to admit responsibility for sentencing purposes.  *Trujillo*, 257 P.3d at 1198-99.  However, unlike this case, in *Trujillo* the court "made it quite obvious it was very concerned" about the defendant's lack of remorse, "stating no less than five times" that petitioner lacked remorse or had denied responsibility for his crimes.  *Id.* at 1199. Accordingly, Petitioner has not shown that the trial court's consideration of his lack of remorse had a "substantial and injurious effect" on his sentence and he is not entitled to habeas corpus relief on Ground One (b).  *See Brecht*, 507 U.S. at 623

## VI.    Conclusion

The Petition should be denied because Petitioner's claims are either procedurally defaulted and barred from review, or lack merit.

Accordingly,

**IT IS RECOMMENDED** that the Petition for Writ of Habeas Corpus (Doc. 1) be **DENIED AND DISMISSED**.

**IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave to proceed *in forma pauperis* on appeal be **DENIED** because the dismissal of the Petition is justified by a plain procedural bar and reasonable jurists would not find the procedural ruling debatable or because Petitioner has not made a substantial showing of the denial of a constitutional right.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals.  Any notice of appeal pursuant to Federal Rule of Appellate Procedure 4(a)(1), should not be filed until entry of the District Court's judgment.  The parties have fourteen days from the date of service of a copy of this recommendation within which to file specific written objections with the Court.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6 and 72.  Thereafter, the parties have fourteen days within which to file a response to the objections.  Failure to file timely objections to the Magistrate Judge's Report and Recommendation may result in the District Court's acceptance of the Report and Recommendation without further review.  *See United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003).  Failure to file timely objections to any factual determination of the Magistrate Judge may be considered a waiver of a party's right to appellate review of the findings of fact in an order or judgment entered pursuant to the Magistrate Judge's recommendation.  *See* Fed. R. Civ. P. 72.

Dated this 22nd day of April, 2014.

Bridget S. Bade
United States Magistrate Judge